IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WESLEY HARPER,** | : | |
| | : | |
| **Plaintiff** | : | CIVIL NO. 1:CV-06-0017 |
| | : | |
| v. | : | (Judge Rambo) |
| | : | |
| **SUE HANNAH,** *et al.*, | : | |
| | : | |
| **Defendants** | : | |

## OPINION AND VERDICT OF THE COURT

Plaintiff Wesley Harper, an inmate confined at the Smithfield State Correctional Institution ("SCI-Smithfield") in Huntingdon, Pennsylvania, commenced this action *pro se* by filing a civil rights complaint (Doc. 1) pursuant to the provisions of 42 U.S.C. § 1983. Plaintiff alleges that Defendants violated his First Amendment right to freedom of speech when they confiscated three (3) manuscripts and various certificates written by him about SCI-Smithfield employees. A non-jury trial was held on December 2, 2008.

**I.   Findings of Fact**

At trial, the following evidence was presented.

1.   Harper is the author of a manuscript entitled "The Nominees." (Defs.' Ex. 3.)

2. Harper also is the author of two attachments to "The Nominees," both entitled "Certificate of Upgrade to Complete Asshole." The first certificate, dated December 29, 2004, states that it was awarded to SCI-Smithfield Corrections Officer Friedenberger. (Defs.' Ex. 2 at 1.) The second certificate, dated May 10, 2003, states that it was awarded to SCI-Smithfield Sergeant Wright. (*Id.* at 2.)

3. On or about January 4, 2005, Harper placed a copy of "The Nominees" and a copy of the "Certificate of Upgrade to Complete Asshole" awarded to Corrections Officer Friedenberger in Defendant Hannah's mailbox.

4. Harper attached a cover letter to Hannah indicating that copies of the documents already had been presented to Corrections Officer Friedenberger and Captain Lantz. (Defs.' Ex. 1 at 2.)

5. Harper testified that he also allowed other inmates to read the documents.

6. On the morning of January 4, 2005, upon entering the housing unit where Harper was housed, Hannah, the Unit Manager at that time, noted a higher level than usual of noise and tension emanating from the unit.

7. Hannah asked other SCI-Smithfield staff what was happening and was advised to check her mailbox.

8. Upon checking her mailbox, Hannah discovered Harper's cover letter

2

attached to a copy of "The Nominees" and the certificate that had been awarded to Correctional Officer Friedenberger.

9.   Hannah prepared a misconduct report against Harper charging him with using abusive, obscene, or inappropriate language to an employee, which is a Class I Charge under DC-ADM 801, the Department of Corrections' Inmate Discipline policy.[1]   (Defs.' Ex. 1 at 1.)

10.   Following a hearing on January 7, 2005, Harper was found guilty of misconduct and sentenced to thirty (30) days in the Restricted Housing Unit ("RHU").   (*Id.* at 7.)

11.   Harper is the author of two additional manuscripts entitled "Now Hiring!" and "The Honey Bun Police."   (Defs.' Exs. 4 & 5.)

12.   Harper also is the author of numerous certificates containing the names of various SCI-Smithfield employees to whom they were "awarded".

13.   On January 9, 2005, corrections officers in the RHU performed a routine inventory of Harper's property and discovered the two additional manuscripts and certificates.

14.   Because the RHU corrections officers observed that these written materials

---

[1] *See* http://www.cor.state.pa.us, DOC Policies, DC-ADM 801, Attachment 1-A.

contained the names of various staff members at SCI-Smithfield, the materials were confiscated and sent to the security office. (Defs.' Ex. 7.)

15. Following confiscation of these additional written materials, Harper filed a grievance complaining that they had been wrongfully confiscated in violation of his First Amendment right to freedom of speech.

16. On February 22, 2005, Defendant Painter, a Lieutenant at SCI-Smithfield, provided a written response to Harper's grievance in which he indicated that he had summoned Harper to his office and returned all of his writings except "The Nominees" and the two accompanying certificates. (Defs.' Ex. 6.) The response further indicated that the latter materials had not been returned because they were the subject of a misconduct and had been determined by the hearing examiner to contain abusive, obscene, or inappropriate language to an employee, but that Harper had the option to send the writings home. (*Id.*)

17. Harper appealed from Painter's response, and on March 3, 2005, Defendant John Palakovich, who was the Superintendent of SCI-Smithfield at the time of the events in question, denied the appeal on the basis that the written materials used

abusive, obscene, or inappropriate language to an employee, and thus would not be returned to him.[2]  (Defs.' Ex. 8.)

18.   Harper's appeal to final review was denied by Kristen Reisinger, Assistant to the DOC Chief Grievance Officer at the time, on the basis that the confiscated writings are considered obscene and therefore would not be returned to Harper. (Defs.' Ex. 9.)

19.   Palakovich testified that the use of abusive, obscene, or inappropriate language by an inmate to an employee creates an atmosphere of abusiveness and tension within the correctional institution.

20.   Palakovich further testified that, if uncorrected, the situation can cause agitation between inmates and staff in that inmates may assume a more aggressive stance toward staff.

## II. Discussion

The United States Supreme Court has recognized "that imprisonment does not automatically deprive a prisoner of certain important constitutional protections, including those of the First Amendment." *Beard v. Banks*, 548 U.S. 521, 528 (2006)

---

[2]Palakovich testified that, at the time he responded to Harper's appeal, he was unaware that Painter had returned all of the writings except "The Nominees" and the two accompanying certificates.

(citing *Turner v. Safley*, 482 U.S. 78, 93 (1987)).  Nevertheless, prison officials may adopt regulations that restrict prisoners' constitutional rights as long as the regulations are "reasonably related to legitimate penological interests."  *Turner*, 482 U.S. at 89; *Beard*, 548 U.S. at 528.

The *Turner* Court set forth the following four factors that must be considered in determining the reasonableness of a regulation that infringes upon an inmate's First Amendment rights: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) whether there are "alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) the availability of "ready alternatives" for furthering the governmental interest.  *Turner*, 482 U.S. at 89-90.

A plaintiff bears the burden of persuasion.  *See Beard*, 548 U.S. at 529 (citing *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) ("The burden, moreover, is not on the State to prove the validity of prison regulations but on the prisoner to disprove it.")  Moreover, "courts owe 'substantial deference to the professional judgment of prison administrators."  *Beard*, 548 U.S. at 528 (quoting *Overton*, 539 U.S. at 132).

Defendant Palakovich testified that DOC policy prohibits inmates from using abusive, obscene, or inappropriate language to or about an employee. Upon review of Harper's appeal from the denial of his request to return the remainder of his confiscated writings (specifically, "The Nominees" and the two accompanying certificates), Palakovich responded that the writings would not be returned because they contained abusive, obscene, or inappropriate language to an employee. Palakovich testified that where inmates are not held accountable for using abusive, obscene, or inappropriate language to prison staff, other inmates take notice and follow suit, thus creating a disruption in the orderly running of the institution.

With regard to the first factor set forth in *Turner*, a valid, rational connection exists between the DOC policy prohibiting inmates from using abusive, obscene, or inappropriate language to prison staff and the legitimate governmental interest in maintaining discipline and order in the prison. Thus, the confiscation of the additional manuscripts and certificates by the RHU corrections officers upon discovering that they contained the names of various SCI-Smithfield employees in order to investigate whether the materials used abusive, obscene, or inappropriate

7

language, and to prevent their circulation among other inmates pending that investigation, served the function of maintaining order in the institution.[3]

As to the second factor, Harper had alternative means of exercising his First Amendment rights. For example, it appears that no limitation would have been placed on his rights had he not distributed writings containing abusive, obscene, or inappropriate language to staff throughout the prison. Moreover, even though "The Nominees" and the two accompanying certificates were not returned to Harper, an attempt was made to accommodate his rights when he was invited to send the writings home. Finally, Harper was free to exercise his First Amendment right to freedom of speech by creating written material that did not contain abusive, obscene, or inappropriate language to or about SCI-Smithfield staff.

As to the third factor, if prison authorities had fully accommodated Harper's First Amendment right to freedom of speech by allowing him to distribute his written materials containing abusive, obscene, or inappropriate language to or about SCI-Smithfield staff throughout the prison without any consequences, the resulting impact

---

[3]The Court sought an explanation as to why the material confiscated on January 9, 2005, namely "Now Hiring!," "The Honey Bun Police," and the numerous certificates, were returned to Harper. Upon review of these writings, the Court finds that "The Honey Bun Police" contains at least as much abusive, obscene, or inappropriate language to or about SCI-Smithfield employees as "The Nominees." However, based on the testimony at trial, the Court concludes that "Now Hiring!," "The Honey Bun Police," and the numerous certificates were not thoroughly read by SCI-Smithfield staff and that they were returned to Harper merely because they were not involved in the misconduct regarding "The Nominees."

on guards and other inmates would be negative. As testified to by Defendant Palakovich, the elevated noise and tension that Defendant Hannah observed on the day "The Nominees" was distributed easily could have escalated to a more serious situation. If the situation was not corrected by confiscating the additional writings, the safety of guards and inmates could have been significantly compromised if the writings had been allowed to circulate among inmates, thus causing some inmates to assume a more aggressive stance toward the guards based on the content of the writings.

With regard to the fourth factor, as stated in *Turner*, "the absence of ready alternatives is evidence of the reasonableness of a prison regulation." *Turner*, 482 U.S. at 90 (citing *Block v. Rutherford*, 468 U.S. 576, 587 (1984)). Where Harper already had been found guilty of misconduct for using abusive, obscene, or inappropriate language to an employee in "The Nominees," and additional writings containing the names of SCI-Smithfield staff were discovered in his property, no reasonable alternative existed other than to confiscate the materials. The confiscation was necessary in order to investigate whether the writings also violated DOC policy and to prevent their distribution pending that determination. Accordingly, the confiscation was necessary in order to maintain a sense of order and discipline in the prison. Moreover, it is significant that, after a determination that these writings were

9

not related to the misconduct, they were returned to Harper and that he was given the option to send the unreturned writings home.

Based upon an application of the factors set forth in *Turner*, Harper has failed to demonstrate that the DOC policy prohibiting inmates from using abusive, obscene, or inappropriate language to prison staff is not reasonably related to a legitimate penological interest in maintaining safety and order in the prison.[4]  Therefore, he may not recover from Defendants.

### III. **Conclusions of Law**

1.   A legitimate penological interest exists in preventing material containing abusive, obscene, or inappropriate language to staff from circulating in a prison in order to maintain discipline and to prevent conflict between inmates and prison personnel.

2.   Plaintiff did not demonstrate that the DOC policy prohibiting inmates from

---

[4]In his closing argument, Plaintiff asserted that this Court already had ruled in his favor in its Memorandum and Order dated September 19, 2008 denying Defendants' motion for summary judgment. (*See* Doc. 78).  It is apparent that Plaintiff misinterpreted the Court's decision.  The Court only indicated that Defendants had not presented sufficient evidence for their request for summary judgment to be granted because at that time, they had not demonstrated that the restriction on Plaintiff's First Amendment rights that occurred when his writings were confiscated was justified by some policy reasonably related to a legitimate penological interest. (*See* Doc. 78 at 10.)

using abusive, obscene, or inappropriate language to prison staff is not reasonably related to the legitimate penological interest in disallowing material containing such language from circulating in a prison in order to maintain order and discipline and to prevent conflict between inmates and prison personnel.

3.   The numerous certificates confiscated on January 9, 2005 were not introduced as evidence at trial, and thus the Court is unable to draw a direct conclusion regarding their content.

4.   However, Defendant Painter testified that the writings discovered by RHU staff, including the numerous certificates, were confiscated because they contained the names of SCI-Smithfield staff.

5.   Thus, the Court draws the inference that the certificates contained language that is abusive, obscene, or inappropriate to staff.

6.   Harper's manuscripts, "Now Hiring!" and "The Honey Bun Police" were admitted into evidence and reviewed by the Court.  The Court concludes that, although they are not necessarily obscene, these manuscripts contain language that is inappropriate and abusive regarding SCI-Smithfield staff.

7.   Accordingly, the evidence establishes that "Now Hiring!," "The Honey Bun Police," and the numerous certificates were appropriately confiscated to

11

prevent their circulation pending investigation of their content in order to maintain order and discipline and prevent conflict between inmates and prison personnel.

## IV.  Verdict

In accordance with the above findings of fact and conclusions of law, **IT IS HEREBY ORDERED THAT** the court finds in favor of Defendants and against Plaintiff and directs the entry of judgment by the Clerk of Court.  The Clerk of Court shall close the file.

                                         s/Sylvia H. Rambo  
                                        Sylvia H. Rambo  
                                        United States District Judge

Dated: December 9, 2008.